Robert L. WOODSON, Appellant,

v.

CITY OF INDEPENDENCE,
et al., Respondent.

No. WD 62202.

Missouri Court of Appeals,
Western District.

Jan. 13, 2004.

Robert L. Woodson, Kansas City, MO, pro se.

Steven E. Mauer, Kansas City, MO, for Respondent.

Before THOMAS H. NEWTON, P.J., PATRICIA A. BRECKENRIDGE and PAUL M. SPINDEN, JJ.

THOMAS H. NEWTON, Presiding Judge.

In 2001, the City of Independence (City) determined that a home owned by Mr. Robert L. Woodson was a dangerous building. Mr. Woodson appealed this finding to the circuit court. The City sought summary judgment on the grounds of collateral estoppel, asserting that the house had already been found to be a dangerous building in 1996 and, therefore, it was unnecessary to relitigate this issue. Mr. Woodson countered that a Release filed by the City in 2000 released that house from the 1996 finding because it was fully repaired. Although the Release specifically referred to a Notice that had been filed in 1996 about the house at issue, because the Release listed an address covering four homes, the City insisted it applied to a different home. In spite of the ambiguity created by the Release as to whether the problems with the house were resolved by 2000, the circuit court granted the City's motion. We reverse.

I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Woodson filed a Petition for Review of a dangerous building determination on one of his buildings. The City filed a motion for summary judgment, asserting the affirmative defense of collateral estoppel. The circuit court granted the City's motion.

Mr. Woodson owns the property located in Independence, Missouri. Its main address is 1221 Allen Road; however, there are four houses on that property, each with its own address: 1217, 1219, 1221, and 1223.

In 1996, the City determined that 1223 N. Allen Road was a dangerous building in violation of the City's Code, section 4.01.008. On November 1, 1996, the City filed a Notice with the Recorder declaring that the "property located at 1223 N. Allen Rd., Independence, MO, and legally described as Dickinsons W B ADD. All Ex S 199.15′ of W 155′ of Lot 22" was a dangerous building. This was Document Number I0069244, Book I2919, Page 1461. On December 9, 1996, the Building Official's Findings of Facts listed the following defects: (a) soffits and eaves missing sections; (b) siding broken and deteriorated; (c) missing sections of roof, weather deterioration; (d) interior ceilings water damaged, moldy, and collapsing; (e) interior floor having holes, spongy; (f) bare splices in wiring; and (g) damaged smoke detector. Mr. Woodson appealed this determination to the Circuit Court and then to this

Court, where it was dismissed for failure to timely prosecute his appeal.

Mr. Woodson claims that he thereafter made all of the repairs required by the 1996 finding. The City, however, claims that no repairs were made, but that the case was not followed up and so the house was never demolished.

A Release was filed with the Recorder on September 25, 2000, which stated that the City:

> releases that NOTICE filed by the City on the 1st day of November, 1996, and recorded as Document Number I0069244[,] Book I2919, page 1461.
>
> The dangerous building located at 1221 Allen Rd., and legally described as, Dickinson's W.B. Addition, all except the south 199.15 feet of west 155 feet of lot 22, ... has been resolved and the dangerous conditions no longer exist.

Mr. Woodson claims this Release released 1223 N. Allen from the dangerous building finding because it specifically states that it releases the Notice from November 1, 1996, and lists the same Document, Book, and page number as the Notice that said 1223 N. Allen was a dangerous building. The City claims the Release applied to the house at 1221 Allen, which was another dangerous building that was repaired,[1] because the Release says "1221" and not "1223."

On June 22, 2001, the City sent Mr. Woodson notice of violations of the City Code, section 4.01.008, on the 1223 N. Allen Road property. On September 18, 2001, the Building Official again produced Findings of Fact, listing the following defects: (a) deteriorating, sagging roof; (b) defective attempts to repair being done without permits; (c) rotten soffits and fascia; (d) exposed bare rotten wood siding; and (e) dilapidated accessory building (ap-

parently a garage). These Findings also named the building as "the property commonly known as 1221 Allen Road, Independence, Jackson County, Missouri, with buildings at an address of 1223 N. Allen Rd., Independence, Jackson County, Missouri." This finding was appealed to the Board of Building and Engineering Appeals. On December 18, 2001, the Findings of the Building Official were upheld.

Mr. Woodson appealed this finding to the circuit court. The City filed a motion for summary judgment on the grounds of collateral estoppel, claiming the question of whether the house at 1223 N. Allen Road was a dangerous building had already been adjudicated. The circuit court held a hearing on this motion. At the hearing, the City explained that because it had not demolished the building in 1997, it started the procedure over to determine whether the status of the house had changed, in spite of the lack of permits for repairs. The City claimed that after an inspection of the house, it discovered that the house had not been repaired and was still a dangerous building. Mr. Woodson claimed that he had done the repairs and that those repairs did not require a permit. He asserted that the Release demonstrated that those repairs were completed, so the house could not "still" be a dangerous building. He further maintained that when the City was inspecting the house, it discovered repairs of the roof in progress and put a stop order on the repair work, contradicting the City's assertion that he made no repairs.

The circuit court granted the City's motion for summary judgment, finding that Mr. Woodson's Petition for Review of the Board of Appeals was barred by collateral estoppel. Mr. Woodson appeals, raising two points, each containing three sub-

---

1. The legal description covers the entire 1221 Allen Rd. property, including all four houses.

points. In his first point, Mr. Woodson asserts that the circuit court erred in granting summary judgment because the City did not comply with Rule 74.04,[2] the City's counsel knowingly made false and/or unsubstantiated statements,[3] and the City referred to ordinances to prove its case but did not provide certified copies of those ordinances to the court. In his second point, Mr. Woodson asserts that the circuit court erred in finding his Petition was barred by collateral estoppel because the issues in the two cases were not identical, the City cannot take a position inconsistent with its previous position, and the City admitted that if the defects listed in 1996 had been repaired then collateral estoppel would not exist.

## II. MOTION TO DISMISS FOR FAILURE TO COMPLY WITH RULE 84.04

The City has filed a motion to strike Mr. Woodson's brief for failure to comply with several sections of Rule 84.04. Although Mr. Woodson has not filed a similar motion with respect to the City's brief, in his reply brief he attacks the City's brief for similar violations of Rule 84.04. Where necessary in discussing the City's motion, we will also address Mr. Woodson's points.

Mr. Woodson is appearing *pro se*, but he is still held to the same standard as an attorney and, therefore, must comply with the requirements of Rule 84.04. *Kittle v. Kittle*, 31 S.W.3d 127, 129 (Mo.App. S.D.2000). Substantial compliance with

Rule 84.04 is mandatory. *Gray v. White*, 26 S.W.3d 806, 815 (Mo.App. E.D.1999). Requiring compliance with Rule 84.04 ensures that the appellate court does not act as an advocate for the party by speculating on facts and arguments that were not asserted. *Stickley v. Auto Credit, Inc.*, 53 S.W.3d 560, 562 (Mo.App. W.D.2001).

Appellate courts are not obligated to review an appeal on the merits when the brief violates the requirements of Rule 84.04, and may dismiss the appeal. *Weisenburger v. City of St. Joseph*, 51 S.W.3d 119, 125 (Mo.App. W.D.2001). But "the procedural rules are to be liberally construed to promote justice and minimize the number of cases disposed of on technical grounds." *Geiersbach v. Blue Cross/Blue Shield of Kansas City*, 58 S.W.3d 636, 639 (Mo.App. W.D.2001). So we have discretion to review an appeal on the merits even when various parts of the brief do not comply with Rule 84.04. *Gray*, 26 S.W.3d at 816.

The City first complains that Mr. Woodson's statement of facts does not comply with Rule 84.04(c), particularly that the facts are biased and inflammatory.[4] Interestingly, Mr. Woodson complains that the City's statement of facts also does not comply with Rule 84.04(c) because the facts asserted are argumentative and unsupported. The statement of facts is required to be fair and concise, giving the appellate court an immediate, accurate,

---

2. Unless otherwise indicated, all rules refer to the Missouri Court Rules (2003).

3. Mr. Woodson's point actually states that these false statements were made in violation of Rule 55.03, but in response to the City's motion to strike his brief he stated that he neglected to remove the reference to Rule 55.03. Therefore, we read this assertion of error as merely stating that the City's counsel knowingly made false statements, and do not consider this question in terms of Rule 55.03.

4. The City also complains that Mr. Woodson's statement that inspection of the house was done by unlawful entry was raised for the first time on appeal. But Mr. Woodson has maintained that the inspection was unlawful since he filed his Petition for Review, and nowhere are we asked to actually address whether the entry was unlawful or not. Such statement might be considered an attempt to create bias, but it does not influence our opinion.

complete, and unbiased understanding of the facts. *Stickley*, 53 S.W.3d at 562. On balance, both parties' statement of facts, especially when taken together, give an immediate and complete understanding of the facts, and while neither side may be entirely unbiased, their statements are not inflammatory.

 The City also complains that Mr. Woodson's points relied on are noncompliant with Rule 84.04(d). The points relied on should "state briefly and concisely what actions or rulings of the court are challenged and why, in the context of the case, the legal reasons identified support the claim of reversible error." *Stickley*, 53 S.W.3d at 562. Mr. Woodson has two points relied on, attempting to treat one as related to the grant of summary judgment and one as related to collateral estoppel. But both of his points contain multiple issues, when each point should contain only one issue. *Lamar Adver. of Mo., Inc., v. McDonald*, 19 S.W.3d 743, 745 (Mo.App. S.D.2000). A party cannot group multiple contentions about different issues together into one point relied on.[5] *In the Interest of A.H.*, 963 S.W.2d 374, 379 (Mo. App. S.D.1998) (*overruled on other grounds by State ex rel. Stubblefield v. Bader*, 66 S.W.3d 741 (Mo. banc 2002)). As we are able to discern what errors Mr. Woodson is complaining of, we choose to review those errors in spite of the fact that his points relied on are deficient. *Gray*, 26 S.W.3d at 816.

The City also complains that Mr. Woodson raised issues in his points relied on that were never raised below. A party cannot raise an argument for the first time

on appeal. *City of Cuba v. Williams*, 17 S.W.3d 630, 632 (Mo.App. S.D.2000). But the issues that the City claims were not raised in the circuit court were, in fact, raised below, although not as clearly as Mr. Woodson states them in his brief.

 Finally, the City complains that Mr. Woodson's argument section does not comply with Rule 84.04(e). It complains that he does not show how the principles of law interact with the facts of the case and again that Mr. Woodson raises issues not raised in the circuit court. The argument must develop the contentions raised in the point relied on and show how the principles of law and the facts of the case interact. *Weisenburger*, 51 S.W.3d at 124. Although Mr. Woodson's brief is not as coherent as might be preferred, he does set out law to support his assertions and he does set out the facts of his case that relate to this law.

 The argument section should also include a concise statement of the applicable standard of review. Rule 84.04(e). Mr. Woodson properly set out the standard for review of a summary judgment motion in his first point, but then discussed collateral estoppel in his second point as though this point had a different standard of review. Because this is an appeal of a motion to grant summary judgment, the only applicable standard of review is the summary judgment standard of review. The rules of collateral estoppel must be considered because summary judgment was granted on the basis of collateral estoppel, but the standard of review

---

**5.** Mr. Woodson misunderstands the City's contention here. He appears to think the City is complaining that Points 1 and 2 are different arguments from each other. But the City's actual complaint is that each point contains different arguments within itself, which is against the rules. Because Mr. Woodson has multiple arguments within each point, he actually should have had more separate points relied on, one for each different argument.

never changes.[6] But since Mr. Woodson included the proper standard, although he then added an additional, improper standard, he has substantially complied with this requirement.

The appellate court should not scour the record to determine what the appellant is asserting. *Crawford County Concerned Citizens v. Mo. Dep't. of Natural Res.*, 51 S.W.3d 904, 908 (Mo.App. W.D.2001). The court also cannot speculate and research as an advocate for the party. *Stickley*, 53 S.W.3d at 563. Although Mr. Woodson's brief is not as clear and compliant as would be preferred, the brief is still sufficiently clear that we are not required to speculate about his arguments. We, therefore, deny the motion to strike and address this appeal on the merits. *See Geiersbach*, 58 S.W.3d at 638–39 (not dismissing the appeal for violating Rule 84.04 because although appellant's brief provided little assistance in determining the issues on appeal, the single issue was ascertainable based on respondent's brief and the legal file).

### III. STANDARD OF REVIEW

The circuit court shall enter summary judgment only if "the motion, the response, [and] the reply ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 74.04(c)(6). The appellate court reviews the grant of summary judgment essentially de novo. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The record is reviewed in the light most favorable to the party against whom judgment was entered, and the non-movant is given the benefit of all reasonable inferences from the record. *Id.*

The moving party's entitlement to judgment as a matter of law revolves to a great extent around whether that party is the claimant or the defending party. *Id.* at 381. The claimant is the party "seeking to recover," and the defending party is the party "against whom a claim ... is asserted." Rule 74.04(a) & (b). The City is the defending party because its summary judgment motion was in response to Mr. Woodson's Petition for Review. The City is not required to controvert each element of Mr. Woodson's claims in order to establish its right to summary judgment. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381. Instead, the City can establish its right to judgment by showing (1) facts that negate any one of Mr. Woodson's elements; (2) that Mr. Woodson, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of his elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the City's properly-pleaded affirmative defense. *Id.* The City relied on the third method by asserting the affirmative defense of collateral estoppel.

To prevent summary judgment, Mr. Woodson need show only that there is a genuine dispute as to the facts underlying the City's right to judgment on the grounds of collateral estoppel. *Id.* at 382. A genuine dispute exists if the record shows the evidence suggests two plausible, but contradictory, accounts of the essential facts. *Id.* This dispute must be real, not

---

6. Mr. Woodson attacked the City's brief for failing to have the proper standard of review because it did not discuss the standards for collateral estoppel. But as discussed, this entire appeal concerns review of a grant of summary judgment and that is the only applicable standard of review.

argumentative, imaginary, or frivolous. *Id.*

## IV. LEGAL ANALYSIS

 The Release is ambiguous, creating a genuinely disputed issue of fact about the City's affirmative defense. Because there is a genuine dispute of fact as to which home the Release applies, this dispute alone shows that the City, as the movant, is not entitled to summary judgment. This issue is dispositive, so we do not need to consider Mr. Woodson's other arguments.

### A. The Release Creates a Genuine Issue of Fact

 The central issue in this controversy is whether the Release applies to the house located at 1221 Allen or the house located at 1223 N. Allen. The Release is presumed to be valid. *Andes v. Albano*, 853 S.W.2d 936, 940 (Mo. banc 1993). A release is interpreted according to the rules of contract interpretation. *Liquidation of Prof'l Med. Ins. Co. v. Lakin*, 88 S.W.3d 471, 476 (Mo.App. W.D.2002). If a contract is unambiguous, the parties' intention should be determined from the contract itself. *Id.* If the terms of the contract could reasonably have more than one meaning, or the meaning of the language is uncertain, then the contract is ambiguous. *Langdon v. United Rests., Inc.*, 105 S.W.3d 882, 887 (Mo.App. W.D. 2003). If the contract is ambiguous, then the court must resort to parol evidence to determine the contract's meaning. *Northwest Plaza, L.L.C. v. Michael–Glen, Inc.*, 102 S.W.3d 552, 557 (Mo.App. E.D.2003).

The City claims that the Release is plain on its face because it says that it releases "[t]he dangerous building located at 1221 Allen Rd." But the City's claim would require us to look at solely that part of the Release; when interpreting a contract we do not look at provisions in isolation, we look at the whole document. *Tuttle v. Muenks*, 21 S.W.3d 6, 9 (Mo.App. W.D. 2000). When looking at the Release in total, an ambiguity clearly exists.

Aside from the address, the Release gives a legal description of the building released. Because that legal description applies to all four houses on the 1221 Allen Road property, that description is no aid in interpretation. The Release, however, also states that it "releases that NOTICE filed by the City on the *1st day of November, 1996,* and recorded as *Document Number I0069244, Book I2919, page 1461.*" (emphasis added). This statement directs us to that specific Notice to determine what is being released, particularly since we know there are four buildings located at 1221 Allen Road. In the record, the only Notice that was filed by the City on November 1, 1996, as Document Number I0069244, Book I2919, page 1461, is the Notice filed about the house at 1223 N. Allen Road. Although the City maintains that the Release applies to 1221 Allen, which was also a dangerous building, it has failed to provide the circuit court or this court with a copy of any Notice filed with respect to the house at 1221 Allen Road. Furthermore, Mr. Woodson denies that there was ever any problem with the house at 1221 Allen Road.

Because of the ambiguity created by the reference to the Notice and the address written on the Release, the parties also debate whether the City ever refers to 1223 N. Allen Road as 1221 Allen Road. The City denies that it has ever referred to 1223 N. Allen as simply 1221 Allen Road. Mr. Woodson claims that the City uses the address 1221 Allen to refer to 1223 N. Allen Road. Although the record sheds little light on this issue, the Findings of Fact from the Building Official, dated September 18, 2001, do say "the property commonly known as 1221 Allen Road . . .

with buildings at an address of 1223 N. Allen Rd." These Findings also state that the notice about the hearing that was published in the Independence Examiner listed the address as "1223 N. Allen Rd., commonly known as 1221 Allen Rd., Independence, Missouri." This certainly suggests that 1223 N. Allen may be referred to as 1221 Allen, although the City appears to usually list both addresses when using the 1221 Allen address.

Because the parties claim that the Release applied to different buildings, and there is evidence to support both interpretations, a genuine factual dispute exists.[7] When considering the language in the Release that directs us to the Notice of November 1, 1996, and the listed address of 1221 Allen Road, there is an ambiguity. The Release plainly directs us to the Notice about 1223 N. Allen. Coupling that direction with the address 1221 Allen could mean either the specific house with the 1221 address or the whole 1221 Allen property.[8] Summary judgment was therefore

improper because the Release was not unambiguous on its face.[9] *Anderson v. Curators of the Univ. of Mo.*, 103 S.W.3d 394, 399 (Mo.App. W.D.2003).

## B. Collateral Estoppel Does Not Apply

▉▉▉▉ Collateral estoppel precludes parties from relitigating issues that have already been decided. *Hershberger v. Young*, 59 S.W.3d 614, 622 (Mo.App. W.D. 2001). When determining whether collateral estoppel applies, the court must consider four factors: "(1) whether the issue decided in the prior adjudication was identical to the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom estoppel is asserted was a party or was in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit." *James v. Paul*, 49 S.W.3d 678, 682 (Mo. banc 2001). Collateral estoppel is

7. Contrary to the City's assertion, Mr. Woodson is not just saying that the building was repaired and his claim that the Release applies to the 1223 house is not frivolous. The fact that the City claims the Release applies to the 1221 house does not make Mr. Woodson's claim frivolous. The Release is not clear as to which house it refers, and if Mr. Woodson is correct that it refers to the 1223 house then he has support for his assertion that he repaired that house.

8. The City argues that the directions on the Release merely direct us to the county records about all of the properties at 1221 Allen Road. But the description of the Notice that is contained in the Release is very specific, listing the date of the Notice as well as a document, book, and page number. This does not appear to just direct us to an area in the county records, but to a specific document in those records, a document discussing the 1223 house. If the City's contention is, in fact, true, the City will have an opportunity to show this on remand.

9. Although an appellate court should defer to the circuit court's resolution of an ambiguity, *Langdon*, 105 S.W.3d at 887, the circuit court's judgment provides no explanation to tell us that it resolved the ambiguity in favor of the City. But even assuming that by its grant of the summary judgment motion the circuit court did resolve this ambiguity in favor of the City, we may reconsider this in our own review. Under our standard of review, we are reviewing this *de novo* and we must make all reasonable inferences in favor of Mr. Woodson. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 376. Under these circumstances, the Release is unclear and summary judgment should not have been granted. *See Bellon Wrecking & Salvage Co. v. Rohlfing*, 81 S.W.3d 703, 712 (Mo.App. E.D.2002) (finding that although the circuit court found that removal of concrete bases was not independent of appellant's contract obligations, there was a genuine factual dispute as to whether the removal of the concrete bases was extra and, therefore, summary judgment was improper).

not applied if such application would be inequitable. *Id.* at 683. "Each case must be analyzed on its own facts." *Id.*

There is no dispute over whether the last three factors are met, so the only question is whether the issue in the 1996 dangerous building determination is the same as in this 2001 dangerous building determination. Resolving the dispute about the Release will help resolve whether the issues in the two cases are identical.

The Release states that the issues are resolved and the dangerous building no longer exists. Determining which house the Release applies to is, therefore, helpful to determining whether collateral estoppel applies. If the Release applies to the house at 1223 N. Allen Road, then all of the defects found in 1996 were satisfactorily repaired and the 1996 case was finished. Therefore, the dangerous building determination in 2001 must be based on new problems that have since developed. If they are new problems, then the 2001 dangerous building finding is not identical to the 1996 dangerous building finding. Although the final determination is the same, that 1223 N. Allen Road is a dangerous building, a new set of problems led to this determination. Further, if the Release applies to the 1223 house, then this rebuts the City's claim that no repairs were done, which it uses to buttress its claim that these cases are identical.[10] If the Release applies to the 1221 Allen house, then when considering Mr. Woodson's appeal of the dangerous building finding the circuit court may adjudicate whether the asserted defects are different and whether the 2001 findings are new.

The Release is ambiguous, so there is a genuine dispute about the facts needed to support the City's affirmative defense, which is why we are reversing the circuit court and remanding the case. Although we have suggested the potential impact of the resolution of the Release in the prior paragraph, we leave it to the trier of fact to determine the meaning of the Release and its effect on the 2001 dangerous building finding that Mr. Woodson is appealing.

## V. CONCLUSION

In spite of the City's assertions about the "clear" meaning of the Release, we find that the Release is ambiguous. This ambiguity creates a genuinely disputed fact that is necessary to the City's affirmative defense, so summary judgment is inappropriate because the trier of fact must decide that disputed fact in a trial on the merits. The circuit court erred in granting summary judgment. On remand, when the circuit court considers whether Mr. Woodson can prove that the 2001 dangerous building determination was in error, the City may assert the affirmative defense of collateral estoppel and the question of the Release can then be resolved.

PATRICIA A. BRECKENRIDGE and PAUL M. SPINDEN, JJ., concur.

10. Finding that the Release applied to the house at 1223 N. Allen Road also addresses Mr. Woodson's third subpoint in his second point relied on, that if the defects from 1996 were repaired then collateral estoppel would not apply. At the hearing the City said that because no repairs had been made the house remained dangerous and estoppel applied, but admitted that if he had tried to do something then that might be different. Mr. Woodson attempted to clarify that in the hearing by saying that his understanding was that if the building had been repaired then collateral estoppel would not apply. Although his understanding of the City's viewpoint does not mean the City admitted that collateral estoppel would not apply if the house had been repaired, this assumption logically flows from the Release's statement the dangerous conditions were resolved.